Janet BRUNNER, Appellant,

v.

Farouk AL ATTAR, Rima Al Attar,
and Apollo Paint & Body,
Appellees.

No. 01–89–00389–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 15, 1990.

Rehearing Denied March 8, 1990.

Bruce V. Griffiths, Houston, for appellant.

Susan C. Stevenson, Diana V.H. Shelby, Houston, for appellees.

Before SAM BASS, DUNN and O'CONNOR, JJ.

## OPINION

SAM BASS, Justice.

Brunner appeals from a summary judgment for Farouk Al Attar, Rima Al Attar, and Apollo Paint & Body.

We affirm.

Farouk Al Attar and Rima Al Attar are husband and wife, and partners in a general partnership, known as Apollo Paint & Body. Brunner states that Farouk's actions are the basis of this suit, and that Rima and Apollo are vicariously liable. Brunner alleged that Farouk terminated her, because he feared that she would catch and spread the Acquired Immune Deficiency Syndrome (AIDS) to employees. Appellees urged that Brunner was terminated because of her refusal to work during the hours required, her request to be terminated, and her failure, inability and/or refusal to perform the work expected of her.

Brunner stated that she had neither contracted AIDS, nor been infected with the human immunodeficiency virus which causes AIDS.

Appellees moved for summary judgment, alleging that Brunner did not state a cause of action, and could not amend her pleadings to state a cause of action.

Brunner testified by deposition that she was terminated from Apollo Paint & Body because she was a volunteer with the AIDS Foundation. Brunner had told Farouk that

she would be volunteering in her free time on Saturdays and Sundays, and in the evenings. Brunner promised that her volunteer work would not interfere with her position at Apollo, and stated that there was no danger to the employees at Apollo Paint & Body, because Brunner could not catch AIDS from the patients' touching, sneezing, or breathing on her. She further stated that the only way to catch AIDS is through sexual contact or blood transfusions. Brunner told Farouk that his customers did not have to know about her volunteer work. Farouk responded by saying that he could not allow Brunner to perform volunteer work at the AIDS Foundation and work at Apollo. Farouk told Brunner that he did not want to place himself, his family, and the office workers in jeopardy. Farouk urged Brunner to resign, and she refused.

Rima told another supervisor not to let Farouk fire Brunner. In a later discussion, Farouk asked Brunner to reconsider, but she would not. Farouk then said that he would have to fire Brunner.

On February 24, 1989, the trial court granted appellees' motion for summary judgment as to the following claims: (i) wrongful termination, in violation of the public policy of the State of Texas; (ii) retaliatory discharge and violations of her right to free speech and right to freely assemble, under Article I §§ 8 and 27 of the Texas Constitution; and (iii) discrimination because of handicap, in violation of Tex.Rev.Civ.Stat.Ann. art. 5221k (Vernon 1987). The trial court ordered that Brunner's pleadings be stricken as to those claims, as well as her claim for damages. Brunner does not assert that her firing violated her right to free speech and assembly in this appeal.

In reviewing the granting of summary judgment, this Court must accept as true the non-movant's version of the evidence, and make every reasonable inference in favor of the non-movant. *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 734 (Tex.1985).

In her first point of error, Brunner asserts that this Court should not permit her to be terminated for performing volunteer work for the AIDS Foundation because her termination violates the public policy exception to the employment-at-will doctrine.

■ Brunner does not allege that her employment was governed by a contract, or that it was for a definite term. The general rule is that employment for an indefinite term may be terminated at will and without cause. *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d at 734. In *Sabine Pilot,* the Texas Supreme Court recognized a very narrow exception to the judicially-created employment-at-will doctrine. *Id.* at 735. "That narrow exception covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act." *Id.* The supreme court stated that where an employee sought to invoke the public policy exception, "it is the plaintiff's burden to prove by a preponderance of the evidence that his discharge was for no reason other than his refusal to perform an illegal act." *Id.* In *McClendon v. Ingersoll–Rand Co.,* 779 S.W.2d 69, 71 (Tex.1989), the supreme court announced another judicially-created exception to the employment-at-will doctrine, which permits recovery of lost future wages, mental anguish, and punitive damages, where the "plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund."

■ Brunner alleges that she was fired because she refused to quit her volunteer work with the AIDS Foundation; however, she has not alleged that she was terminated for refusing to perform an illegal act, or because her employer wished to avoid paying benefits under her pension fund. Brunner has failed to allege sufficient facts to place her within these two exceptions to the employment-at-will doctrine. *See Jennings v. Minco Technology Labs, Inc.,* 765 S.W.2d 497, 500–502 (Tex.App.—Austin 1989, writ denied) (court refused to create an exception to the doctrine on the grounds of public policy, to enable an employee to obtain declaratory and injunctive relief, restraining employer from administering ran-

dom urinalysis drug tests on employees); *Berry v. Doctor's Health Facilities*, 715 S.W.2d 60, 61, 62–63 (Tex.App.—Dallas 1986, no writ) (court declined to create an exception to the employment-at-will doctrine on the grounds of public policy, to encompass a cause of action asserting wrongful termination, because the employee "knew too much" about alleged improprieties within the hospital administration); *Winters v. Houston Chronicle Publishing Company*, 781 S.W.2d 408 (Tex.App.— Houston [1st Dist.] 1989, writ pending) (court declined to extend *Sabine Pilot* exception to employment-at-will doctrine, where private employee alleged he was discharged for reporting to management that his upper level managers and supervisors were engaged in circulation fraud, inventory theft, and a "kickback" scheme). This Court cannot create another exception for performing volunteer work at the Houston AIDS Foundation. If such an exception is to be created, that is a matter within the province of the Texas Supreme Court. *Jennings*, 765 S.W.2d at 500–502.

We overrule point of error one.

■ In her second point of error, Brunner asserts that the trial court erred in holding that her termination was not discrimination "because of handicap" in violation of the Tex.Rev.Civ.Stat.Ann. art. 5221k (Vernon 1987), the version of the statute applicable to this case.

Section 5.01(1) of article 5221k of the Texas Revised Civil Statutes [1] provides that it is unlawful to discharge an individual because she is handicapped:

It is an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge an individual ... with respect to compensation or the terms, conditions, or privileges of employment because of ... handicap....

Tex.Rev.Civ.Stat.Ann. art. 5221k, sec. 5.01(1) (Vernon 1987). The statute also explains the meaning of the phrase "because of handicap":

In Article 5, "because of handicap" or "on the basis of handicap" refers to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job.

Tex.Rev.Civ.Stat.Ann. art. 5221k, sec. 1.04(b) (Vernon 1987) [2]. The statute further defines "handicapped person" and "handicap":

(7)(A) "Handicapped person" means a person who has a mental or physical handicap, including mental retardation, hardness of hearing, deafness, speech impairment, visual handicap, being crippled, or any other health impairment that requires special ambulatory devices or services, as defined in Section 121.002(4), Human Resources Code, but does not include a person because he is addicted to any drug or illegal or federally controlled substances or because he is addicted to the use of alcohol.

(B) "Handicap" means a condition either mental or physical that includes mental retardation, hardness of hearing, deafness, speech impairment, visual handicap, being crippled, or any other health impairment that requires special ambulatory devices or services, as defined in Section 121.002(4), Human Resources Code, but does not include a condition of addiction to any drug or illegal or federally controlled substances or a condition of addiction to the use of alcohol.

Tex.Rev.Civ.Stat.Ann. art. 5221k, sec. 2.01(7)(A) & (B) (Vernon 1987) [3].

In *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex.1987), the Texas Supreme Court held that a plaintiff seeking to recover under article 5221k must first es-

1. Ch. 7, 1st Called Session, 1983 Tex.Gen.Laws 37, 45, *amended by*, ch. 1186, sec. 11, 1989 Tex.Gen.Laws 4824, 4828–4829.

2. Ch. 7, 1st Called Session, 1983 Tex.Gen.Laws 37, 38, *amended by*, ch. 1186, sec. 2, 1989 Tex. Gen.Laws at 4824.

3. Ch. 7, 1st Called Session, 1983 Tex.Gen.Laws 37, 40, *amended by*, ch. 1186, sec. 3, 1989 Tex. Gen.Laws at 4824–4825.

tablish that she falls within the protected class: a handicapped person who was not hired because of her handicap. It is not sufficient for the plaintiff to merely establish that she was denied employment "because of handicap" under article 5221k. *Id.* The explanation of the term "because of handicap" is contained in section 1.04(b) of article 5221k, under the heading "Specific Rules of Construction." *Id.* "This 'rule of construction' simply adds the requirement that before any 'handicap' can be the basis of a discrimination action, it must not impair the person's ability to reasonably perform the job." *Id.* However, the plaintiff must still be "handicapped." *Id.*

Because Brunner has not alleged that she was handicapped, we cannot hold that she has established that appellees discriminated against her "because of handicap."

We overrule point of error two.

The judgment is affirmed.